UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHYLLIS HARRIS HARDINSON,

                   Plaintiff,                Case No.  05-40160

v.                                      District Judge Paul V.  Gadola
                                      Magistrate Judge R.  Steven Whalen

COMMISSIONER OF SOCIAL
SECURITY,

                   Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Phyllis Harris-Hardison brings this action under 42 U.S.C. §405(g) to challenge a final decision of Defendant Commissioner denying her application for disability benefits under Title XVI of the Social Security Act.  Both parties filed  summary judgment motions, which have been referred for a report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  Because the hypothetical question posed to the Vocational Expert did not accurately portray Plaintiff's non-exertional limitations, I recommend that the Defendant's Motion for Summary Judgment be DENIED, that the Plaintiff's Motion for Summary Judgment be GRANTED, and that the case be remanded for further administrative proceedings pursuant to Sentence Four of §405(g).

# I.   PROCEDURAL HISTORY

Plaintiff filed an application for Supplemental Security Income (SSI) disability benefits on October 31, 2001, alleging an onset of disability as of April 1, 1978.[1]  After the initial denial of her claim, Plaintiff filed a timely request for an administrative hearing, conducted on July 13, 2004 by video teleconference, before Administrative Law Judge (ALJ) Cynthia M. Bretthauer.  Plaintiff, represented by non-attorney Gary Lane, testified, as did Vocational Expert (VE) Lee Knutson.  On September 21, 2004, the ALJ issued a written decision finding the Plaintiff not disabled (Tr. 11-23).   The Appeals Council denied Plaintiff's request for review on May 5, 2005.  On May 23, 2005, Plaintiff filed a timely Complaint in this Court, pursuant to 42 U.S.C. §405(g).

# II.   FACTS

Plaintiff, born March 21, 1949, was 55 years old at the time of the ALJ's decision. She has a GED, and previously worked in a fast-food restaurant. She alleged disability due to seizures, numbness, back pain, headaches and hypertension.

## A.   Plaintiff's Testimony

Plaintiff testified that she lives in an apartment in Detroit with a friend (Tr. 264-5). She has never had a driver's license, and depends on her friend for transportation to see doctors and run errands, although she also takes public transportation (Tr. 265).  She testified that she has been "real sick" for 15 to 20 years (Tr. 265).

---

[1] The ALJ adjusted the onset of disability date to August 1, 2000, pursuant to 20 C.F.R. §416.335 (Tr. 15).

Plaintiff stated that in 2001, she worked for a time as a cook at a McDonald's restaurant, but left because of physical problems, including swelling, seizures and loss of balance (Tr. 266). She testified that she stopped drinking alcohol in 2002, and that she had not used illegal drugs since the 1970's or 1980's. When asked about a positive test for cocaine in 1998, she denied drug use, and reckoned that her legitimate medications resulted in a false positive (Tr. 268-69).

The Plaintiff's physical complaints included swollen feet, for which she took pain medication; one to two seizures per month; headaches and back pain; and kidney problems and loss of bladder control, for which she took medication (Tr. 269-72). She said that she could walk for about one-half block without a cane, and one to one-and-one-half blocks with a cane; that she could stand for 10 to 15 minutes; sit for about 30 minutes; and lift 10 to 15 pounds (Tr. 273). Plaintiff said that on a typical day, she would eat breakfast, bathe, dress and watch television. She also sleeps during the day (Tr. 273). She testified that she does not cook or clean the house, but that someone else (presumably her friend) does those chores. She said that she folds, but does not wash the laundry, and that she goes grocery shopping with her friend. She stated that exercise is difficult because her blood pressure goes up and she gets drowsy. She indicated that she does not socialize with anyone (Tr. 273-76).

### B.    Medical Evidence

Dr. Ron Kattoo saw the Plaintiff in August of 1997, for complaints of high blood pressure, seizures, arthritis and vision problems. He noted that Plaintiff's blood pressure was adequately controlled with medication and that she had a full range of motion in all her

joints. Dr. Kattoo also noted that Plaintiff was not compliant in taking Dilantin, an anti-seizure medication (Tr. 164-65).

In September of 1998, Plaintiff was picked up by EMS and taken to an emergency room. After she woke up, she told medical personnel that she had been drinking, and that she had a seizure disorder, but was not taking her Dilantin (Tr. 157). She experienced a tonic-clonic seizure in the ER, which was resolved with Ativan given intravenously (Tr. 157). The discharge diagnosis was acute alcohol intoxication, respiratory depression and substance abuse (Tr. 158).

Plaintiff was again taken to an emergency room in December of 1999, following a reported seizure. However, she left the hospital, stating that she did not want any treatment (Tr. 151-52).

Plaintiff underwent a psychiatric examination by Dr. A. Kumar, M.D., a DDS psychiatrist, on March 5, 2002 (Tr. 205-207). His diagnoses were dysthymic disorder and chronic alcohol abuse; dependent personality disorder with borderline traits; high blood pressure, status post two closed head injuries and grand mal seizures. He also assigned a GAF of 45. He concluded, "The prognosis is guarded. In my opinion, this claimant is unable to manage her benefit funds until she totally sobers up." (Tr. 207).

On March 27, 2002, Plaintiff was also assessed by consultive psychologist Edward A. Czarnecki, Ph.D. He found that although she was not significantly limited in her abiity to carry out very short and simple instructions, Plaintiff was moderately limited in the ability to maintain attention and concentration for extended periods (Tr. 210). In his Psychiatric

-4-

Review Technique Form (PRTF), Dr. Czarnecki rated Plaintiff as having moderate difficulties in maintaining concentration, persistence or pace (Tr. 224).

### C.   The VE's Testimony

VE Lee Knutson classified Plaintiff's past work as a fast food worker as unskilled, at the light exertional level (Tr. 277).  The ALJ posed the following hypothetical question to the VE:

> Q: If I were to assume on the basis of the record an individual who's 55-years-old and has the work experience and education of this Claimant.  Assuming someone who has the following exertion limitations, could sit for six to eight hours out [of] a day; stand and walk at least six hours out of a day.  Someone who can lift and carry frequently up to 25 pounds; occasionally up to 50 pounds.  Further assuming someone who must avoid concentrated exposure to activities involving unprotected heights; being around moving and hazardous machinery; dust, odors, fumes and gases.  And further limiting such a person to jobs that are simple and unskilled.  Could such a person perform the Claimant's past work?
>
> A: Yes, Judge (Tr. 277).

The VE testified that such a person could also perform the work of an assembler (23,500 such jobs in the Detroit metropolitan area); a baggage porter (1,000 jobs); and a kitchen helper (19,220 jobs). (Tr. 277).

The VE testified that if the hypothetical question were amended to include a prohibition on regular contact with the public, the past relevant work would be precluded, but the other jobs would not (Tr. 278).  He further testified that if the exertional limitations were further restricted to lifting and carrying only 10 pounds frequently and 20 pounds occasionally, the following jobs would be available: light assembler (11,510 jobs);

dishwasher (7,640 jobs); and maid/housekeeper (9,390 jobs).  The VE said that his testimony was consistent with the Dictionary of Occupational Titles (DOT) (Tr. 278).

Under questioning by Plaintiff's representative, the VE testified that "[i]f a person could not stay awake during the day, or basically maintain attention or persistent (sic, persistence) or work pace, this person would be unemployable."  (Tr. 278).

### D.    The ALJ's Decision

The ALJ found that the Plaintiff had not engaged in substantial gainful activity since at least August, 2000 (the adjusted onset of disability date) (Tr. 16).  He found that she had the impairments of a history of seizures, alcohol abuse, hypertension, intermittent colonic spasms, arthralgia, a depressive disorder NOS, and a personality disorder.  The ALJ found that at least one of these impairments was "severe" within the meaning of the Regulations, but that Plaintiff did not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 18).  The ALJ also found that the Plaintiff's mental impairments caused "a moderate limitation of her ability to maintain concentration, persistence, or pace...." (Tr. 18).

In assessing the Plaintiff's Residual Functional Capacity (RFC), the ALJ summarized the medical evidence, including both treating and consultive sources.  He noted that Dr. A. Kumar, a psychiatrist, assigned her a Global Assessment of Functioning (GAF) of 45, and that a DDS psychologist found that Plaintiff had moderate difficulty maintaining concentration, persistence, or pace (Tr. 17).  Ultimately, the ALJ arrived at the following RFC:

-6-

"Based upon my review of the evidence, I find that the claimant possesses the residual functional capacity to lift and carry (push/pull) up to 25 pounds frequently and 50 pounds occasionally and to sit, stand, and walk up to 6 hours of an eight-hour workday. However, she is limited to performing no more than simple unskilled work which does not require contact with the general public, must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, and gases, and must avoid working around hazards such as unprotected heights and moving machinery." (Tr. 19-20).

Describing a number of inconsistencies in the record, the ALJ found the Plaintiff's subjective allegations of pain and limitations lacking in credibility (Tr. 20).

Because the Plaintiff's RFC precluded regular contact with the public, the ALJ found that she was unable to perform her past relevant work in the fast food industry (Tr. 21). However, he found that Plaintiff could perform other types of work that existed in significant numbers in the national economy, specifically assembler, baggage porter, and kitchen helper, and that therefore she was not disabled under the Social Security Act (Tr. 22, 23).

### III.   STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way,

without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.   FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

-8-

# V.   ANALYSIS

Plaintiff argues in general that the denial of SSI disability benefits was not based on substantial evidence, and that the ALJ did not apply the correct legal standard.   Specifically, and most pertinent this Report and Recommendation, Plaintiff argues that the hypothetical question posed to the VE did not accurately or completely set forth either her physical or psychological impairments.

In *Varley v. Secretary of HHS,* 820 F.2d 777, 779 (6th Cir. 1997), the Sixth Circuit held that a hypothetical question constitutes substantial evidence only if it accurately portrays the individual's physical and mental impairments. More recently, in *Webb v. Commissioner of Social Sec.* 368 F.3d 629 (6th Cir. 2004), the court rejected the  proposition that an ALJ is required to list all of a claimant's maladies verbatim in the hypothetical question. Nonetheless, the *Webb* court acknowledged that "[t]he hypothetical question . . . should include an accurate portrayal of [a claimant's] individual physical and mental impairments." (internal citations omitted) *Id.* at 632, *quoting Varley, supra,* 820 F.2d at 779.   *See also Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001).

## A.   Exertional/Physical Limitations

Based on a review of this record, I find that the hypothetical question accurately portrayed the Plaintiff's *exertional* limitations, at least those limitations the ALJ found credible.  Furthermore, the ALJ's decision to reject the Plaintiff's subjective complaints was

itself based on substantial evidence.[2] The opinion is replete with references to the evasiveness and inconsistencies in Plaintiff's own testimony, as well as medical evidence that conflicts with her self-reported limitations. *See* Tr. 20. While the Plaintiff does appear to suffer discomfort from a number of physical problems, the question is whether her limitations are preclusive of work. She complains of high blood pressure, but Dr. Kattoo reported that her blood pressure was adequately controlled with medications and that she had a full range of motion (Tr. 164-65). She claims to suffer from frequent seizures, and in fact was diagnosed with a seizure disorder, but has been non-compliant with medication (Dilantin) that would control the seizures (Tr. 158, 162). As the ALJ noted, the last record of treatment for a seizure disorder was in December of 1999 (approximately five years before her administrative hearing), when she chose to leave a hospital emergency room without receiving any further treatment (Tr. 151). *See* 20 C.F.R. §416.929(c)(3)(v) (in evaluating symptoms and their effect on capacity to work, ALJ will consider the treatment the claimant has received).

In her motion, Plaintiff argues that the ALJ completely omitted her bladder control problem from the hypothetical question. However, even assuming that she has that problem, there is a dearth of evidence in the record–including the Plaintiff's own testimony– to suggest

---

[2]The ALJ's decision as to credibility must be based on specific reasons, and must be supported by substantial evidence in the record. *Howard v. Commissioner of Social Security,* 276 F.3d 235, 242 (6th Cir. 2002); *Heston v. Commissioner of Social Security,* 245 F.3d 528, 536 (6th Cir. 2001); *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). As a general rule, the courts cede enormous latitude to the ALJ's credibility determinations. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993).

that there are specific occupational limitations that result from her bladder condition.  Under *Webb, supra*, the ALJ is not required to list every ailment or diagnosis in the hypothetical question, but only the actual occupational limitations that result from those conditions and that he or she finds credible, based on the entire record.

Were this *de novo* review, I might well come to a different conclusion regarding the Plaintiff's physical RFC. However, reversal of the decision is not appropriate "merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Here, the ALJ's conclusions regarding the Plaintiff's exertional limitations are based on substantial evidence, and are well within the "zone of choice" accorded the fact-finder at an administrative hearing.  Hence, the hypothetical question adequately included all the physical limitations that the ALJ found credible.

### B.    Non-exertional/Psychological Limitations

The hypothetical question is more problematic as to the Plaintiff's non-exertional mental limitations, specifically regarding her deficiencies in concentration, persistence and pace.  The ALJ's exclusion of the Plaintiff's subjective physical complaints from the hypothetical question was permissible because he found those complaints substantially unsupported by the medical evidence of record.  However, the ALJ made a specific finding that the Plaintiff's *mental* impairments caused "a moderate limitation of her ability to maintain concentration, persistence and pace...." (Tr. 18).  That finding was well-supported clinically.  For example, Dr. Edward A. Czarnecki, a DDS psychologist, assessed the

Plaintiff as having moderate difficulties maintaining concentration, persistence or pace (Tr. 224).  Dr. Kumar, a consultive psychiatrist, assigned her a GAF of 45 (Tr. 207).[3]

Having made a determination, based on substantial evidence, that Plaintiff had moderate limitations in the area of concentration, persistence and pace, he was obliged to incorporate those limitations in his hypothetical question.  He did not.  The only non-exertional limitations included were that the jobs be "simple and unskilled" (Tr. 277),  which insufficiently captures deficits in pace and persistence.

Under the evaluative scale used by this ALJ, deficiencies in concentration, persistence and pace are rated on a five-level range of severity:  none, mild, moderate, marked and extreme.  *See* C.F.R.  404.1520a(c)(4)(2001).   The previous regulations rated such deficiencies on a five-level range of frequency:  never, seldom, often, frequent, and constant. *See* 20 C.F.R. § 404.1520a(b)(3)(2000).  While I do not suggest that there is a precise correspondence between the two scales, I note that "moderate" and "often" are each at the mid-point of a five-level range.  In *Bankston  v. Commissioner,* 127 F. Supp. 2d 820, 826 (E.D. Mich. 2000), the Court found that "a mental deficiency occurring 'often' may not be consistent with substantial gainful employment."  Thus, even if a "moderate" deficiency is not *per se* preclusive of employment, it is severe enough that the functional consequences of that impairment should be included in both the RFC and the hypothetical question.

---

[3] A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ), 34 (4th ed.2000).

*Varley, supra*; *Webb, supra*.  Once an ALJ makes a factual determination that a claimant has "often" or "moderate" deficiencies in concentration, pace, etc., he must craft a hypothetical question which encompasses, in concrete terms, the substance of that finding.

In *Newton v. Chater*, 92 F.3d 688 (8th Cir. 1996), the  hypothetical question posed to the VE described a person "with a minimal ability to read and write, a borderline range of intelligence, a ninth or tenth grade education, an inability to perform highly skilled or technical work, *a capacity for simple jobs*, and a demonstrated ability to control his drinking problem."  *Id*., 92 F.3d at 694 (emphasis added).  Remanding for further administrative proceedings, the Court found that the reference to "simple jobs" was not enough to constitute inclusion of the impairments or deficiencies in concentration, persistence and pace which the ALJ  noted.

Similarly in  *McGuire v. Apfel,* 1999 WL 426035 (D. Oregon 1999), at 15, the court held that a hypothetical question that described the claimant as requiring "simple work" was insufficient to encompass the limitation of "often having deficiencies in concentration, persistence, or pace resulting in failure to complete tasks in a timely manner."  The Court explained the inadequacy of describing "a person who could perform only routine, simple tasks":

> "That is a far cry from a person who cannot concentrate at work, works at a slow pace, and cannot complete projects on a timely basis.  Numerous people who only have the ability to perform simple, no-skilled tasks, can still perform those tasks in a timely manner.  It is the inability to work at a normal pace resulting in untimely completion of tasks which causes a person to be disabled from working. *Because the ALJ's hypothetical does not mention any problems regarding completion of tasks on time or the pace with which the person would*

-13-

*work, this court cannot equate the ALJ's statement with the ALJ's express determination of McGuire's limitation.*" (Emphasis added).

In the present case, the description "simple and unskilled" jobs does nothing to account for the Plaintiff's limited ability to keep up with the pace of her work, and complete her "simple and unskilled" tasks in a timely manner over an eight-hour workday.[4]  Indeed, the VE testified that an inability to maintain persistence or work pace would preclude the very jobs the ALJ found that Plaintiff was capable of performing (Tr. 278).

In making his non-disability determination, the ALJ specifically relied on the VE's testimony (Tr. 22).  Because that testimony was premised on a faulty hypothetical question, it cannot constitute substantial evidence.  *Varly, supra*.  Therefore, a remand is necessary. Although Plaintiff has not presented an overwhelming case for benefits, a remand for further administrative hearings, pursuant to Sentence Four of 42 U.S.C. §405(g), is required for the reasons discussed above.  *See Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994) (Entitlement to benefits is established only if "the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence

---

[4]By contrast, the Court in *Roe v. Chater*, 92 F.3d 672 (8th Cir. 1996), approved a hypothetical question that described an individual "not capable of work 'requiring constant, close attention to detail,' that he requires 'occasional supervision,' and that he is not capable of work '*at more than a regular pace*.'" (Emphasis added).  The Court held that "[t]hese phrases capture the concrete consequences of Roe's 'deficiencies of concentration, persistence, and pace' and sufficiently present Roe's disabilities to the VE." *Id.*, 92 F.3d at 676-77.  In *Brachtel v. Apfel*, 132 F.3d 417, 421 (8thCir. 1997), the hypothetical question "included the ability 'to do only simple routine repetitive work, which does not require close attention to detail'...[and] included the impairment that '[Brachtel] should not work at more than a regular pace.'"

to the contrary is lacking").

## VI.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be DENIED, that Plaintiff's Motion for Summary Judgment be GRANTED, and that the case be remanded for further administrative proceedings consistent with this Report and Recommendation.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R.  Steven Whalen
R.  STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  August 21, 2006

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys
and/or parties of record by electronic means or U.S. Mail on August 21, 2006.

S/Gina Wilson
Judicial Assistant